The case before us is brought into this Court by writ of certiorari
from the judgment of the Chief Justice at chambers, his judgment having been pronounced pro forma, that it might be reviewed in this Court at this term. The case involves the question whether a substitute, taken into the military service of the Confederate States under the act of April, 1862, was entitled to a discharge upon the conscription of his principal, after the passage of the act of 5 (400) January, 1864.
It seems the substitute was not bound under any act of Congress to do service on his own account (being past 50 years of age), so that the question is freed from complication; and is simply whether the act of the Government, calling back into the service the principal, puts an end to the substitute's term of service. We think it does not.
As we had occasion to say at the last regular term of this Court, inGatlin v. Walton, ante, 325, with the special agreement of the parties in a case of substitution, with the considerations and motives actuating them, the Confederate States have had nothing to do. They acquiesced in the arrangement of the parties so far as to accept one man instead of another, in compliance with what was supposed to be their mutual wish and convenience; and in respect to the Confederate States, the substitute stands, therefore, in the light of a volunteer for the term of service to which the principal was subject; and such being the case, there is *Page 256 
no principle we are aware of to exempt him from the performance of the full term of that service, by reason of any action of the Government which may affect the rights of his principal under their private agreement.
There is a manifest intention on the part of the Congress to retain the substitute in the service; and I take it there can be no question that Congress had the power to do so specifically, without any general legislation to cover their case. No provision is made for their discharge in the act of the January, 1864, but they are left in the condition in which they were found — volunteers for the war.
(401) What seems to us conclusive evidence of this purpose of the Congress to continue them in the service is found in the act itself. It declares: "Whereas, in the present circumstances of the country, it requires the aid of all who are able to bear arms, the Congress of the Confederate States do enact, that no person shall be exempt from military service by reason of his having furnished a substitute; but this act shall not be so construed as to affect persons who, though not liable to render military service, nevertheless furnished a substitutes." From this we learn two things clearly: (1) that the Confederate States were in need of soldiers in the field; and (2) that they expected to get them by calling back into the service the men who had theretofore put in substitutes. The object of the act was to secure an addition to the military force. Now, this object would be entirely frustrated if one man was to be let out for every one taken in, which would be the case (proximately at least) if substitutes are entitled to a discharge.
It is perfectly clear, therefore, that Congress intended no such thing. The implication to the contrary is as forcible as if they had declared it in words.
A military force in some form constitutes, amongst all people, a part of the organism which we call government, being a portion of the executive branch; and such a force, when once constituted, is manifestly intended for an indefinite term of service, unless there be something in the organic law to define and limit it. Such limitation in the case before us can be found only in the general provision of law relating to the army, to which the petitioner belongs, defining its term of service to be for the war. A sense of interest, as well as justice, will induce the Government, through its proper agents, to listen to all applications for relief on account of disability, or arising from time to time, and to these the soldier must resort.
(402) The judgment at chambers is therefore reversed, and a judgment rendered in this Court that the petitioner, Joseph McDaniel, is rightfully in the custody of the military authorities, and must so continue. *Page 257